**CHAN NOM GEE v. UNITED STATES.**

No. 6659.

Circuit Court of Appeals, Ninth Circuit.

April 4, 1932.

Hugh C. Todd, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash., John T. McCutcheon, Asst. U. S. Atty., of Tacoma, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for the United States.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Chan Nom Gee, alias Chan Bok Sik, 27 years of age, a native and citizen of the republic of China, was taken into custody without a warrant of arrest on July 17, 1930, at Tacoma, Wash., by an immigration inspector. He was held for several days, and during his detention he made voluntary statements to the immigration authorities. Thereafter he was removed to Seattle, where, on July 25, 1930, a complaint was filed against him before United States Commissioner Bowman, charging him with being unlawfully in the United States without a certificate of residence. It was a summary proceeding. The commissioner ordered Chan Nom Gee deported to China, from which judgment an appeal was taken to the United States District Court for the Western District of Washington, and, upon the hearing of said appeal, the proceeding was dismissed upon the ground that the commissioner did not have jurisdiction of the alien defendant. United States v. Chin Nun Gee, 45 F.(2d) 225, 226. Thereafter, and before the decree of dismissal was filed, an immigration inspector swore to another complaint before United States Commissioner Fitch against Chan Nom Gee, alias Chan Bok Sik, charging him with being an alien, a Chinese person with a status of laborer, and a person prohibited by the laws of the United States of America from being in, or remaining in, the United States without a certificate of residence, as required by the laws of the United States. A warrant of arrest was issued, the defendant taken into custody under said warrant, and thereafter released on bond.

The case was heard before Commissioner Fitch, who ordered the alien deported. An appeal was taken to the United States District Court, and a trial de novo was had, after which the District Court made its order and decree deporting the alien defendant. He now comes to this court upon appeal, seeking a dismissal of the proceedings.

The verified complaint upon which appellant was tried in the District Court charges that appellant is an alien Chinese person "with a status of laborer and a person prohibited by the laws of the United States of America from being in, or/and remaining in the United States, and is without a certificate of residence as required by the laws of the United States"; that appellant "was not and is not lawfully entitled to be and remain in the United States; that he is without such certificate of residence, or any lawfully procured certificate showing a right to be or to remain in the United States; contrary to the form of the statutes in such cases made and provided," etc.

The warrant issued upon said complaint, and upon which the arrest was made, only alleges "violation of Section 6, Act of May 5, 1892, and Act of November 3, 1893, U. S. R. S.," etc. The complaint, however, specifically mentions "Violations of Sections 1, 6 and 12, Act of May 6, 1882, as Amended by Act of July 5, 1884; and Sec. 13 of the Act of September 13, 1888, and Sec. 6 of the Act of May 5, 1892, and Act of November 3, 1893."

Section 1 of the Act of May 6, 1882, as amended by the Act of July 5, 1884 (22 Stat. L. 58; 23 Stat. L. 115), provides that "It shall not be lawful for any Chinese laborer to come from any foreign port or place, or having so come to remain within the United States." And section 6 of the same act provides that every Chinese person, other than a laborer, must, in order to enter the United States, present the certificate therein required from certain officials of his own government identifying him as one of the exempt classes. These two sections are now found in title 8, USCA, §§ 263 and 265, respectively.

Section 13 of the Act of September 13, 1888, 25 Stat. L. 476, 479, provides that any Chinese person or person of Chinese descent found unlawfully in the United States may be arrested upon a warrant issued upon a complaint under oath, by any judge or commissioner of any United States court, and, when found to be not lawfully entitled to be or remain in the United States, shall be removed therefrom. This section is found in title 8 USCA § 282.

The Act of May 5, 1892 (27 Stat. L. 25), expressly continued in force all these previous statutes, and provided in section 2 thereof that any Chinese person or person of Chinese descent adjudged to be not lawfully entitled to be or remain in the United States shall be removed to China, etc. This section is found in title 8 USCA § 285.

Section 3 of the same act provides that any Chinese person or person of Chinese descent arrested under the provisions of that act or of the acts thereby extended shall be adjudged to be unlawfully within the United States, unless he shall establish by affirmative proof to the satisfaction of such justice, judge, or commissioner his lawful right to remain. That section is now found in title 8 USCA § 284.

Section 6 of the same act required the registration of all Chinese laborers then in the United States, and provided that any laborer tnereafter found in the United States without a certificate of residence should be deported. This section is found in title 8, USCA § 287.

All of these statutes were expressly re-enacted without limitation by the Act of April 29, 1902, as amended by section 5 of the Act of April 27, 1904 (32 Stat. L., Part 1, 176; 33 Stat. L., 394–428). Each of these provisions is now in force.

Appellant contends that the act of 1892, as amended by the act of 1893, does not and cannot apply to the appellant; that it applies only to aliens in the United States when the act was passed. This act makes it unlawful for an alien Chinese laborer to be found within the United States without a certificate of residence. Judge Neterer, in United States v. Chin Nun Gee, supra, expressed the opinion that the age of appellant, 27 years, would preclude summary proceedings under the act just mentioned, "as such refers to Chinese in the United States at the time." While we think that Judge Neterer was correct in dismissing the proceeding upon the ground that the commissioner did not have jurisdiction of the appellant, we are in accord with the decision of this court in Lew Quen Wo v. United States, 184 F. 685, 689, in which case it was held that, where the complaint "clearly defined the status of the appellant and truly stated that he was a Chinese manual laborer within the United States without a certificate of residence, it was immaterial that he came to the United States at a time when it was impossible to obtain a certificate of residence." This must be so, because the statute provides that "it shall not be lawful for any Chinese laborer to come from any foreign port or place, or having so come to remain within the United States." 8 USCA § 263. And the statute further provides that any Chinese laborer found in the United States without a certificate of residence shall be deported. 8 USCA § 287. Summary proceedings in alien Chinese laborers' cases were permissible when the original Exclusion Act was passed. No formal complaint or pleadings were required. Fong Yue Ting v. United States, 149 U. S. 698, 729, 13 S. Ct. 1016, 37 L. Ed. 905. But the law has been changed, and jurisdiction in deportation cases is now predicated upon a warrant issued upon a sworn complaint. 8 USCA § 292. Appellant was arrested upon a warrant issued upon a sworn complaint, both conforming to the statutes, thus giving the courts jurisdiction of him.

In the District Court a trial was had de novo upon the certified transcript of the proceedings before Commissioner Fitch, and other evidence offered by the government. The commissioner's transcript shows that appellant appeared before him on the 9th of December, 1930, when he was fully informed of his rights and given an opportunity to present evidence. Hugh C. Todd, Esq., attorney and counselor at law, appeared for appellant, and at his request a continuance of the hearing was had until the 15th of December, 1930, to give appellant time to produce witnesses and evidence for his defense. The examination was held on the 15th day of December, 1930. Appellant was represented by his attorney, and the government was represented by the United States attorney. The transcript of the proceedings before the commissioner further shows:

"The matter proceeding to a trial of said charges against said defendant, the United States introducing testimony and evidence in substantiation of said charges and thereupon having rested, the said defendant by his said attorney and counsel having introduced and submitted in defense the certified copy of statement of facts and proceedings before A. C. Bowman, United States Commissioner, for the Western District of Washington, Northern Division, No. 2965, together with decision of the United States District Court for said District in Cause No. 20431, and said defendant having by his counsel thereupon rested, and having moved for a dismissal of said charges and the discharge of said defendant from custody, the said motion having thereupon by me been denied; and it appearing from the evidence and testimony so produced

before me, that the said Chan Nom Gee, alias Chan Bok Sik, alias Harry Chin, is by race, language and color a Chinese person and a laborer by occupation; and whereas, the said Chan Nom Gee, alias Chan Bok Sik, alias Harry Chin, has failed to show by any affirmative proof to my satisfaction, or any proof or evidence whatsoever, his lawful right to remain in the United States; and it appearing to me that the said Chan Nom Gee, alias Chan Bok Sik, alias Harry Chin, has been given a sufficient opportunity to produce evidence and witnesses to show his right to remain in the United States; and whereas, the said Chan Nom Gee, alias Chan Bok Sik, alias Harry Chin, has not made to appear to me that he is a subject or citizen of any other country than China, and it appears that he is a Chinese laborer and is a subject of the Republic of China, and is not registered and a member of the exempt class of Chinese persons provided for in and by said acts of Congress," etc. Judgment of deportation followed.

While in custody of the immigration officers, and before his arrest, appellant gave a voluntary statement to an immigration inspector, in which he said that his true name was Chan Nom Gee, that he had also used the names of Chan Bok Sik and Harry Chin, and that he was a full-blooded Chinese person. This statement was in the form of questions and answers, and was taken down in shorthand, thereafter transcribed and signed by appellant. At its inception the inspector said to appellant: "You are advised that I am a United States immigrant inspector and as such have authority to take testimony concerning the right of aliens to be in the United States. Are you willing to give me a personal history of yourself which may be used in future proceedings for or against you? A. Yes."

In addition to giving his name and nativity, he testified that before he came to Tacoma he worked in a lottery house in Oakland, Cal., and for a while as a clerk at Yee Wah store, Clay street and Grant avenue, San Francisco; that his father's name is Chan Gin Hai, and that he could be located at the Yee Wah store in San Francisco; that his mother's name is Ju Shee, and she is living in China; that he has one brother and one sister; that his brother's name is Chan Nom Doo, 18 years old, and he arrived at San Francisco in 1930; that appellant was a witness for his brother when admitted at the port of San Francisco; that his brother is now in San Francisco, and

may be found at the Yee Wah store; that appellant first entered this country in 1920 under the name of Chan Nom Gee, at San Francisco, arriving on the Japanese boat "Tenyo Maru"; that he was admitted as the minor son of a merchant; that he has a certificate of identity which he left with his friend, Chin Bo, who is now living in San Francisco, "but I don't know his address and I don't know where he is working."

"Q. Have you any way to communicate with your father in order to obtain the certificate of identity? A. It would be hard for my father to locate this man; I have to write to some friend of mine.

"Q. Is your father a merchant and a member of the Yee Wah store in San Francisco? A. Yes, he works there at night."

The statement was admitted in evidence over the objection of appellant's counsel, and he now contends that such ruling was error. We think the statement was admissible. See Bilokumsky v. Tod, 263 U. S. 149, 155, 156, 44 S. Ct. 54, 68 L. Ed. 221; Low Foon Yin v. United States (C. C. A.) 145 F. 791; Bak Kun v. United States (C. C. A.) 195 F. 53, 54; Chan Wong v. Nagle (C. C. A.) 17 F. (2d) 987; Lee Choy v. United States (C. C. A.) 49 F. (2d) 24, 26.

While not required to do so, the San Francisco immigration officials investigated the statement made by appellant, but were unable to verify same. San Francisco records were produced at the trial and offered in evidence by the government. No. 28484/8—1, 8—2, and 8—3, relates to Chan Pak, alias Chan Gen Tai, merchant of Yee Wo and Company, 801 Grant Avenue, San Francisco, and Chan Poun Shee and Chan Bak Chew, the first and last named presumably being the persons whom the appellant must have claimed as his father and brother. San Francisco No. 28484/8—1 shows that Chan Pak, alias Chan Gen Tai, claimed three sons and one daughter, and that the name of no one of the sons corresponds with either of the names given by the appellant. The appellant claims to have only one brother and one sister. All of the sons claimed by Chan Pak, alias Chan Gen Tai, are now in this country; the records of the other two, in addition to Chan Bak Chew, being San Francisco 19768/21—29 and 21270/9—15. The names of these sons are shown to be Chin Pak Chee and Chin Pak Hon. Nowhere in any of these records is any mention made of any brother of the boys or son of the father by either of the Chinese names given by the appellant, nor does the

record relating to Chan Bak Chew, who was admitted in 1929, indicate that any such person as the appellant was a witness in his behalf. It is also noted that, while San Francisco record No. 28484/8—2 relates to an alleged second wife of Chan Pak, alias Chan Gen Tai, the appellant claims that his mother is living in China, while Chan Pak says that his first wife is dead.

■■ It will be remembered that appellant was arrested on July 17, 1930, and the statement was taken on the following day; that appellant was represented by an attorney; that there was a "summary" hearing before Commissioner Bowman in Seattle on July 25th, which proceeding on appeal was thereafter dismissed by Judge Neterer, United States v. Chin Nun Gee, supra; that a warrant was issued upon a new complaint on December 6, 1930; that the examination before Commissioner Fitch began on the 9th, and was continued, at the request of appellant, to the 15th of December. It will thus be seen that appellant had ample time in which to communicate with his father and his brother in San Francisco, and to make inquiries for his friend Chin Bo, of whose whereabouts he was uncertain, and with whom he left his certificate, a document so personal to himself, evidencing his right to be in the United States. If the statements made to the inspector concerning this certificate and his identity were true, it should have been easy, under the circumstances, to produce evidence and witnesses to prove them. As soon as it was shown that he was an alien Chinese person, the burden was upon him of establishing his right to remain in this country. He stood mute, choosing to rely upon a purely technical defense. His conduct in that regard "forms a basis for inference, which is evidence. Silence is often evidence of the most persuasive character." Bilokumsky v. Tod, supra, at page 153 of 263 U. S., 44 S. Ct. 54, 56.

■ Appellant's contention that the present proceedings should be dismissed for the further reason that, at the time they were commenced before United States Commissioner Fitch, a final order and decree had not been issued by Judge Neterer, is without merit. As observed by Judge Neterer in dismissing the proceedings before him, such dismissal did not preclude deportation proceedings properly initiated.

■ Manifestly it is unnecessary to discuss the additional charges of violating the provisions of the Exclusion Laws relating to the exempt classes. Here the complaint and warrant specifically charge appellant with violating the laws relative to the exclusion of alien Chinese laborers. Such charges are supported by evidence showing that appellant is an alien Chinese laborer, and he has wholly failed to establish his right to remain in the United States. It follows that he must be deported.

We find no error in the record, and the judgment is therefore affirmed.